UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COALITION FOR A LEVEL PLAYING FIELD,
L.L.C., ET AL.,

                              Plaintiffs,

                -against-

AUTOZONE, INC., ET AL.,

                              Defendants.

1:04-cv-08450-RJH

**<u>MEMORANDUM OPINION
AND ORDER</u>**

Richard J. Holwell, District Judge:

        This is a price discrimination action under the Robinson-Patman Act, 49 Stat. 1526, 15 U.S.C. § 13 (2006) (the "RPA").  Plaintiffs, a number of small solely owned auto parts stores and a trade association including such stores, allege they have been competitively injured by defendants' price discrimination in violation of the RPA. Defendants are several auto parts manufacturers, as well as large chain retailers that sell auto parts.  Plaintiffs allege that the manufacturer defendants discriminate in favor of the large chain retailer defendants, injuring disfavored purchasers such as the small store plaintiffs.

        The Court previously dismissed plaintiffs' second amended complaint (the "Prior Complaint") because it did not plausibly allege violations of the RPA.  *Coalition for a Level Playing Field, L.L.C. v. AutoZone, Inc.*, 737 F.Supp.2d 194 (S.D.N.Y. 2010) (the "September 2010 Opinion").  Rather than dismiss with prejudice, the Court permitted plaintiffs to propose curative amendments, and plaintiffs have in turn moved to amend, attaching a third amended complaint (the "Proposed Complaint").  In support of that

1

motion, they note: (1) the addition of putatively curative allegations; (2) a change in the focus of the complaint from auto parts in general to auto part product lines; and (3) their inability to determine or plead the extent of price discrimination without discovery. Defendants oppose amendment and seek dismissal with prejudice, arguing *inter alia* that the proposed additions are entirely conclusory and do not cure the defects in the Prior Complaint.  For the reasons that follow, plaintiffs' motion to amend is denied.

## I.    BACKGROUND

The facts of this case and its procedural history are discussed at length in the Court's September 2010 Opinion, so only a brief exposition follows.  As always at the motion to dismiss stage, the Court takes the well-pled factual allegations of the complaint as true and draws reasonable inferences in plaintiffs' favor.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

The plaintiffs in the Proposed Complaint are four small solely-owned auto parts stores, and the "Coalition for a Level Playing Field, LLC," a coalition of small stores and the warehouse middle-man distributors such stores buy parts through.  (Proposed Complaint ¶¶ 3-6.)  The solely owned stores and warehouse distributors operate in a segment of the auto parts aftermarket that is generally three-step: manufacturers sell to distributors, distributors sell to small locally owned stores, and the small local stores sell to consumers.[1]  (Proposed Complaint ¶ 74(B).)  Over the last several decades the small stores and warehouse distributors have fallen on hard times, as they struggle to compete

---

[1] Apparently distributors may sometimes also sell directly to consumers, and locally owned stores may sometimes buy directly from manufacturers.  (Proposed Complaint ¶ 74(B).)  However the core of the plaintiffs' allegations regards the three-step process, (e.g. Proposed Complaint ¶¶ 89, 94(B)(14)), so the Court refers to warehouses and local stores as operating in the "three-step" segment throughout.  The existence of some direct sales is not material to this opinion.

with the large chain stores that have become an increasingly prevalent feature of the American consumer goods market.  (Proposed Complaint ¶ 79.)  Such chain stores operate in a two-step segment of the auto parts market: manufacturers sell to large chain retailers, then the chain retailers handle all distribution functions and sell to consumers. (Proposed Complaint ¶¶ 61-62 (distribution functions); ¶ 74 (direct resale).)  Defendants are nine such manufacturers and four such chain stores.  (Proposed Complaint ¶¶ 7-26(A), 27-57.)

Plaintiffs' core allegation is that the chain stores' success, at least with respect to the auto parts market, is the result of pervasive price discrimination in violation of the RPA.  (Proposed Complaint ¶ 83.)  They allege that the chain stores in the two step segment of the market force manufacturers to charge them favorable prices for parts, (Proposed Complaint ¶¶ 94(L)-(M)), giving them a significant competitive advantage over the disfavored small stores and warehouse distributors in the three-step segment of the market.  (Proposed Complaint ¶¶ 78-79.)

Plaintiff Coalition for a Level Playing Field, LLC, joined by 133 small stores and warehouse distributors, first filed suit against the retailer defendants in the Eastern District of New York on February 16, 2000.  *See* Complaint, *Coalition for a Level Playing Field v. Autozone Inc.*, No. 00 Civ. 953 (E.D.N.Y. Feb. 16, 2000).  After completion of discovery, a representative number of plaintiffs proceeded to trial which resulted in a jury verdict for defendants, and judgment was entered in defendants' favor on January 28, 2003.  (Prager Decl. Ex. 4.)  On October 27, 2004, the Coalition, joined by certain of the plaintiffs from the Eastern District Action who had not gone to trial, filed this suit in the Southern District of New York, re-alleging a number of RPA claims

and also raising a new claim alleging discovery misconduct on the part of the defendants in the Eastern District action.  The Eastern District action and this one are similar, and in the September 2010 Opinion the Court found aspects of this action precluded by the Eastern District action.  Further details on that subject are beyond the scope of this opinion.

Within the scope of this opinion are the claims, dismissed without prejudice in the September 2010 Opinion, which plaintiffs now seek to press in the Proposed Complaint. There are two such claims.  First, the Proposed Complaint again raises a claim for direct price discrimination against the manufacturer defendants under Section 2(a) of the RPA, and against the retailer defendants under Section 2(f) of the RPA.  Section 2(a) prohibits a seller from discriminating in price when certain conditions are met, and Section 2(f) prohibits a buyer from knowingly receiving discriminatory prices.  15 U.S.C. § 13(a), (f). Second, the Proposed Complaint again raises a claim for indirect price discrimination under Sections 2(d) and 2(e), which prohibit sellers from selectively providing or funding advertising and promotional programs to buyers in order to indirectly discriminate in price between favored and disfavored purchasers.  Buyers are likewise prohibited from knowingly receiving prohibited discriminatory advertising and promotional favors.  *Id.* § 13(d), (e).

As regards the Section 2(a) and Section 2(f) price discrimination claim, in the September 2010 Opinion the Court found that the Prior Complaint failed to plausibly state a claim.  That Complaint had supported its allegations of illegality primarily with a price sheet showing certain price differentials at the retail and warehouse level: retail prices set by the defendant retailers were sometimes lower than the prices warehouse

distributors charged to small store plaintiffs.  From that, the complaint alleged

anticompetitive price discrimination in violation of the RPA.  Noting that "courts may not

presume illegality when the 'nub' of a complaint alleges conduct that is equally capable

of being legal," *September 2010 Opinion*, 737 F.Supp.2d at 214 (citing *Ashcroft v. Iqbal*,

129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009)), the Court concluded that the Prior

Complaint failed because it alleged conduct equally capable of being lawful under the

RPA.  *Id.* at 215-19.  Specifically, the Court noted that the Proposed Complaint also

raised the reasonable inferences that: (1) price differentials resulted from functional

discounts given by manufacturers for the mix of services provided by the retailer

defendants, and (2) price differentials resulted from materially different terms of sale

between the retailer and manufacturer defendants as opposed to those between the

warehouse distributors and manufacturer defendants.  Both types of conduct are lawful

under the RPA.  *See id.* at 210-13.  Because the Prior Complaint did not allege facts that

rendered plausible an inference of illegality, particularly in light of the lawful conduct its

factual allegations suggested, the Court dismissed the price discrimination claim.  *Id.* at

216.[2]

---

[2] The Prior Complaint also contained certain allegations relating to non-price terms of sale that
were not adequately alleged to have the "practical effect" of changing the price charged to
favored sellers, which the Court found were not properly within the purview of a Section 2(d) or
2(e) price discrimination claim.  *September 2010 Opinion*, 737 F.Supp.2d at 212-13, 217-18,
(citing *Corn Prods. Refining Co. v. FTC*, 324 U.S. 726, 740, 65 S.Ct. 961, 89 L.Ed. 1320 (1945);
*Black Gold, Ltd. v. Rockwool Industries, Inc.*, 729 F.2d 676, 682 (10th Cir. 1984)).  The Proposed
Complaint has been shorn of such allegations, replacing them with the general formula for
determining price discrimination in paragraphs 94A.  (Proposed Complaint ¶¶ 94(A), 94(H); Pl.
Mem. 6.)   Nonetheless, defendants object to the possibility that the proposed calculation would
include non-price terms of sale. (Def. Mem. 10.)  Since the Court finds the Proposed Complaint
otherwise deficient, it does not pass on the viability of plaintiffs' proposed calculation, or address
whether that calculation would inappropriately treat non-price terms as indirect price
discrimination.

Also in the September 2010 Opinion, the Court found that the Section 2(d) and 2(e) advertising and promotion claim suffered from an additional defect—its allegations were at too high a level of generality to state a claim on behalf of any particular plaintiff as against any particular defendant. *Id.* at 218. The Prior Complaint alleged that vendor agreements between the various defendants afforded advertising and promotional program kickbacks, without describing or identifying any particular programs received by any particular defendants. Nor did the Prior Complaint plead which of several hundred plaintiffs were denied the opportunity to share in which advertising or promotional program of which defendant manufacturer. Noting that each plaintiffs' claim against each defendant must be plausibly plead, the Court found that this en masse approach to pleading hundreds of claims did not satisfy Rule 8. *Id.*

The Court did not dismiss either the price discrimination or advertising and promotion program claims with prejudice. Rather, the Court deferred decision on whether to grant leave to amend and afforded plaintiffs an opportunity to propose curative amendments.

## II.    THE PROPOSED COMPLAINT

The Proposed Complaint makes a number of changes that plaintiffs contend cure the deficiencies in the Prior Complaint.

### A.    Fewer Plaintiffs and Defendants

The Proposed Complaint drastically reduces the number of plaintiffs. While the Prior Complaint had 134 plaintiffs (Prior Complaint ¶ 6), the Proposed Complaint has but four—the Coalition itself, Gil's Auto Parts, Amelia's Automotive, Inc., and M&M Auto

Parts, Inc.  (Proposed Complaint ¶¶  3-6.)  Plaintiffs contend that this "was done to dramatically simplify the case and make it easier to set forth the required allegations, and enabled the Proposed Pleading to do so without any attached schedules."  (Pl. Mem. 3.)

As for Retailer Defendants, the Proposed Complaint again alleges that four different store chains are independently engaged in the same behavior of inducing price discrimination to competitively injure small parts stores:

> 90.  Wal-Mart and Sam's Club have systematically violated the Robinson-Patman Act since approximately 1981 by activities … that ha[ve] resulted in lower costs of product (including auto parts) for Wal-Mart than its competitors are paying for the same products, and this strategy of violating the Robinson-Patman Act to drive competitors out of business has been adopted and used successfully by AutoZone and Advance, which are admittedly attempting to emulate Wal-Mart's activities…
> (Proposed Complaint ¶ 90.)

The Proposed Complaint has reduced from twelve to nine the number of parts manufacturers that are allegedly complicit in each of the four retailer defendants' price discrimination efforts.  The "Manufacturer Defendants" are defined as ArvinMeritor, Inc., Ashland, Inc. (Valvoline Division), Cardone Industries USA, Ford Motor Company (Motorcraft division), Pennzoil-Quaker State Company, SOPUS Products, Inc., Standard Motor Products, Inc., Stant Manufacturing, and The Armor All/STP Products Company. (Proposed Complaint ¶¶ 31-57.)  All of the allegations in the complaint refer to all nine manufacturers as a group, the "Manufacturer Defendants."

**B.      Product Lines, Determination of Prices**

The Proposed Complaint differs from the Prior Complaint in that it alleges price discrimination not with respect to auto parts, but with respect to auto part product lines.

> 60A.  The Manufacturer Defendants and other auto-part manufacturers offer, price and sell their parts according to product lines, whether or not a customer

buys each and every part within the product line, and with the price of a specific part being dependent on overall purchases of the product line by the Manufacturer's customer.
(Proposed Complaint ¶ 60(A).)

60B.  Auto-part lines are offered, marketed, sold and priced by the Manufacturer defendants as a line, and not by specific parts within a line.  The Plaintiffs and the Defendant Retailers are sold a product line, and the ultimate resale of the line by bits and pieces does not change the way in which parts are negotiated and sold as a group called a line…
(Proposed Complaint ¶ 60(B).)

Plaintiffs explain that the purpose of pleading product lines rather than particular parts is

to remove some of the burden of proving their RPA claims.

60.  The purpose of pleading 'auto-part product lines' instead of specific auto parts is to enable the plaintiffs to prove that the discriminatory pricing occurred…without having to allege or prove that, as to each different part within a product line purchased by a plaintiff, the same part was contemporaneously purchased…which is burdensome to perform for plaintiffs carrying several hundred thousand parts….  Also, the discovery requirements as to 'parts' as distinguished from 'product lines' makes Robinson-Patman Act litigation too costly to maintain and effectively eliminates the Robinson-Patman Act from the nation's antitrust laws if required.
(Proposed Complaint ¶ 60.)

The Proposed Complaint now leads its pricing section with the allegation that the

alleged discriminatory prices on product lines cannot be directly determined, but must be

computed according to a formula introduced in the Proposed Complaint.

94.  Each of the Retailer Defendants purchases its auto-part product lines from the Manufacturer Defendants at a price that is not set forth in writing and which can be determined only by calculating all of the Retailer Defendant's payments to the Manufacturer and the value of any services received by the Manufacturer or saving resulting to the Manufacturer (the "Product-Line Price") for the total of the individual parts purchased for such price.
(Proposed Complaint ¶ 94.)

94A.  The agreement[s] between Autozone, Advance, Wal-Mart and Sam's Club and each of the Manufacturer Defendants is a lengthy document (exceeding 35 pages) in which numerous provisions exist, creating rights and duties between the contracting arties, and providing for payments and credits for the purchase of parts, various fees and allowances, including promotional and advertising

8

> allowances, penalties and other charges.  The total cost of parts can only be
> determined by knowing (i) the amount of money which changed hands under the
> agreement; (ii) the basis for the payment; (iii) the value of the services provided
> by one to the other under the agreement; and (iv) the Blue Book or other reference
> value for the parts sold to the Retailer Defendant under the agreement.  …. To
> determine the extent of the price discrimination alleged by one of the Plaintiff
> Retailers requires a similar analysis of the supplying WD's agreement with the
> Manufacturer Defendant, as to the same auto-part product line, and then the
> results compared, through comparing what discount was given to the Retailer
> Defendants from the Manufacturer's Blue Book price of the parts actually
> purchased with the discount given to the supplying WD from the Manufacturer's
> Blue Book price of the parts actually purchased by the WD.
> (Proposed Complaint ¶ 94(A).)

The Proposed Complaint explains why these complex calculations are needed to

determine the amount of price discrimination:

> 94L.  The Retailer Defendants have created their present system of contracts for
> the purpose of hiding their illegal pricing scheme…
> (Proposed Complaint ¶ 94(L).)

## C.    Price Discrimination Allegations

Despite alleging that the existence and extent of price discrimination cannot be

determined without engaging in the calculations described in ¶¶ 94-94(A), the Proposed

Complaint again alleges price discrimination on the part of all nine manufacturer

defendants in their dealings with each of the four retailer defendants:

> 80.   The Manufacturer Defendants are selling their auto-part product lines to the
> Major Retailers, including the Retailer Defendants, at a price which is 25% (or
> more) lower than the price which the Manufacturers' [sic] charge to the WD's
> who resell the auto-part product lines to Retailer Plaintiffs and other retailer
> members of the Coalition.
> (Proposed Complaint ¶ 80.)

The Proposed Complaint alleges that the manufacturer defendants are induced to

price discriminate by the retailer defendants, and that the manufacturers sell at cost or at a

loss to the retailer defendants:

94L.  The Retailer Defendants have created their present system of contracts for the purpose of hiding their illegal pricing scheme, and the Manufacturers have been forced to go along with it to be able to get the auto-parts business of the Retailer Defendants, even though the Manufacturers themselves are being injured in the process….
(Proposed Complaint ¶ 94(L).)

94M.  The Manufacturers are intimidated from complaining about the discriminatory pricing arrangement for fear of losing the business they are obtaining, even though the business is unprofitable for most of the Manufacturers; accepting unprofitable business is preferred by them to letting their competitors obtain the business….
(Proposed Complaint ¶ 94(M).)

The Proposed Complaint again purports to state factual content in support of its allegations of price discrimination.  It explains that price discrimination is apparent from: (1) the fact that manufacturers also engage in discrimination in their promotional and advertising allowance programs as alleged in Count II (¶ 94(B)(1)); (2) the significant decline in the number and profitability of warehouse distributors, independent auto parts stores, and parts manufacturers since 1990, especially as compared to the success of the retailer defendants (¶¶ 94(B)(2)-(5), (12)); (3) the fact that plaintiffs' retail prices are higher than the retailer defendants' (¶ 94(B)(6)); (4) the retailer defendants' use of a bidding process to purchase auto parts (¶ 94(B)(10)); (5) the fact that the Retailer Defendants have hidden their price discrimination to make it difficult to plead ((¶ 94(B)(11); ¶¶ 94(K)-(L)); and (6) the fact that warehouse distributors sometimes charge the small retailer plaintiffs higher prices for auto parts than the retailer defendants charge to consumers (¶ 94(B)(14).)

The Proposed Complaint has added allegations that explicitly disclaim the possibility that the alleged price differentials are due to lawful conduct by defendants such as functional discounting or materially different terms of sale:

81.  The Discriminatory Price is not attributable to any saving, service or efficiency received, obtained or promised by the Major Retailer to the Manufacturer, as to which there results an additional disparity in price to the WD's.
(Proposed Complaint ¶ 81.)

94F.  The discriminatory prices charged to the supplying WD's (and to any direct-buying independent retailers) reflect anticompetitive price discrimination rather than permissible functional discounts when the required analysis is made, as described in ¶¶ 94A and 94C above.
(Proposed Complaint ¶ 94(F).)

94G.  The contractual arrangements between any one of the Manufacturer Defendants any of the Retailer Defendants is not materially different from the contractual arrangements between the Manufacturer and the buying groups through which all WD's make their direct purchases from the Manufacturer, but for the discriminatory terms involved (favoring the Retailer Defendants) and disfavoring the buying groups and their WD members.
(Proposed Complaint ¶ 94(G).)

## D.      Promotional and Advertising Allowances

The Section 2(d) and 2(e) claim in the Proposed Complaint is similar to that in the Prior Complaint.  Plaintiffs allege that "each of the Manufacturer Defendants has provided an advertising and promotional program to each of the [defendant retailers] without making a proportionate or substantially equivalent advertising and promotional program available to [plaintiffs]."  (Proposed Complaint ¶ 158.)  They describe the types of programs as being "display, endcap and other slotting allowances…; promotional allowances, fees and discounts; and advertising allowances and discounts."  (Proposed Complaint ¶ 159.)  The Proposed Complaint again provides no description as to which of the nine defendants discriminated with respect to which programs, nor does it describe which particular plaintiffs were denied promotional opportunities or were injured thereby.

## III.    DISCUSSION

Under Federal Rule of Civil Procedure 15(a), leave to amend a complaint should be given freely "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party."  *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).  Amendment is futile where the "proposed amended complaint would be subject to immediate dismissal."  *Jones v. New York  State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999).  Moreover justice does not require a plaintiff be permitted to amend when, being "on the plainest notice of what was required," he fails to correct the deficiencies in a prior pleading.  *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978); *Abadin v. Marvel Entm't, Inc.*, No. 09 Civ. 715 (PAC), 2010 WL 1257519, at *4 (S.D.N.Y. Mar. 31, 2010) (when plaintiff is on "plainest of notice of the deficiencies in his original complaint, and ha[s] previously filed an amended complaint," justice does not require "the busy district court to engage in still a third go-around.").  Since the Proposed Complaint fails to correct the deficiencies previously identified by the Court, plaintiffs' motion to amend must be denied.

### A.    Price Discrimination Claim

As did the Prior Complaint, the Proposed Complaint fails to state a claim for price discrimination.  "[I]n order to establish a violation of the [RPA], a plaintiff has the burden of proving that: (1) a 'commodity' was sold in interstate commerce to at least two buyers; (ii) the commodity sold to the disfavored purchaser was of 'like grade and

quality' to that sold to the favored purchaser; (iii) the seller 'discriminate[d] in price between' the favored and disfavored purchaser; and (iv) that discrimination had a prohibited effect on competition." *September 2010 Opinion*, 737 F.Supp.2d at 209-10 (citing 15 U.S.C. § 13(a)); *Texaco Inc. v. Hasbrouck*, 496 U.S. 543, 556, 110 S.Ct. 2535, 110 L.Ed.2d 492 (1990); *George Haug Co. v. Rolls Royce Motor Cars Inc.*, 148 F.3d 136, 141 (2d Cir. 1998). At the motion to dismiss stage, a plaintiff need only give "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *September 2010 Opinion*, 737 F.Supp.2d at 214 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). The Court keeps in mind two requirements when adjudicating the sufficiency of a complaint's factual allegations: "[f]irst, although the Court must still accept factual allegations as true, it should not credit 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action'[;]…[s]econd, accepting creditable allegations as true, the Court must also determine whether they plausibly suggest an entitlement to relief." *Id.* at 213 (quoting *Iqbal*, 129 S.Ct. at 1949) (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).[3]

The Complaint lists many allegations that it claims make defendants' alleged price discrimination scheme obvious. But most of those factual allegations are either conclusory or non-responsive to the existence of price discrimination. First, the fact that plaintiffs also allege promotional program discrimination in Count II (Proposed Complaint ¶ 94(B)(1)), does nothing to support plaintiffs price discrimination allegations

---

[3] The Court further discussed the RPA in the September 2010 Opinion, 737 F.Supp.2d at 209-14, the pleading standard at 214-15, and their application to the Prior Complaint at 216-19. That discussion is incorporated herein by reference.

in Count I, especially in light of the fact that Count II is plead with similarly ambiguous and conclusory allegations.  Second, the relative success of the retailer defendants in the auto parts market as compared to the dwindling small retailer plaintiffs, (Proposed Complaint ¶¶ 94B(2)-(5), (12)), is as easily explained by numerous other competitive differences without concluding that defendants routinely violate the RPA.  Third and similarly, the fact that the retailer plaintiffs themselves charge higher retail prices than the retailer defendants, (Proposed Complaint ¶ 94B(6)), is also as easily explained by their competitive differences than by the alleged discriminatory pricing at a different level of distribution.  Fourth, the retailer defendants use of competitive bidding, (Proposed Complaint ¶ 94B(10)), to purchase auto parts actually refutes an inference of price discrimination, since it indicates that hard bargaining and individual contractual circumstances define prices.  Fifth, the allegation that the retailer defendants intentionally hide their price discrimination, (Proposed Complaint ¶ 94(B)(11); ¶¶ 94(K)-(L)), is itself conclusory and depends on the existence of that price discrimination; absent facts tending to show that the various manufacturer and retailer defendants are engaged in a coverup, that allegation does not support the related allegation of wrongdoing.

Like in the Prior Complaint, the only creditable allegation in the Proposed Complaint tending to support price discrimination is the allegation that warehouse distributors sometimes charge the small retailer plaintiffs higher prices for auto parts than the retail defendants charge directly to consumers.  (Proposed Complaint ¶ 14.)  This allegation, with the corresponding price lists demonstrating instances of this occurrence, properly and plausibly alleges that there is sometimes a price differential at the manufacturer level between sales to warehouse distributors and to retailer defendants.

However, as the September 2010 Opinion noted, not all price differentials are unlawful under the act.  Price differentials could as easily result from lawful practices and not a pattern of price discrimination as alleged by plaintiffs.  First, the Court noted that "a seller may charge a buyer reduced prices if the reduced prices reflect a bona fide 'functional discount'—in essence, a set-off for the value of services the purchaser performs for the seller."  *September 2010 Opinion*, 737 F.Supp.2d at 210.  Such arrangements are a natural reading of the Proposed Complaint.  Like the Prior Complaint before it, the Proposed Complaint describes a group of retailer defendants that, compared to warehouse distributors and local stores, operate in a different distribution chain and provide a different mix of distribution, warehousing, marketing, and promotional services to parts manufacturers.  In this context the alleged conduct (price differentials) is "presumptively allowable."  *Texaco*, 496 U.S. at 548-49.

Second, the September 2010 Opinion noted that "a seller is not obligated to charge the same prices for a commodity if its sales contracts with different buyers contain materially different terms."  *September 2010 Opinion*, 737 F.Supp.2d at 212 (citing *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.*, 990 F.2d 25, 27 (1st Cir. 1993)).  The Proposed Complaint, like the Prior Complaint before it, indicates that auto parts manufacturers enter into unique sales arrangements with each retailer, within which individual part prices fluctuate.  This is particularly so in light of the newly added "product line" allegations, which indicate that individual parts sales occur in the context of a product line buying scheme that defies reduction to simple pricing calculations.

In this context, the Proposed Complaint again asks the Court to infer—from occasional price differentials on particular auto parts at the retail and warehouse levels—

that four different, competing, chain retailers forced nine different manufacturers into a

price discrimination scheme to injure the small store plaintiffs.   To do so would stretch

the limits of plausibility since it is as likely that in each business relationship,

manufacturers and buyers engage in hard bargaining for price, bargaining that leads to

lawful discounts for the different functions chain retailers perform, and results in

materially different contract terms between the various buyers and manufacturers.  For

the reasons explained in the September 2010 Opinion, such conduct does not violate the

RPA.

Instructed of this deficiency in their Prior Complaint, plaintiffs have attempted to

remedy it by adding new allegations to the Proposed Complaint that purport to refute the

inference that functional discounting or materially different terms of sale are responsible

for the occasional downstream price differentials.  However those allegations in the

Proposed Complaint are completely conclusory.  Plaintiffs allege that:

> 81.  The Discriminatory Price is not attributable to any saving, service or
> efficiency received, obtained or promised by the Major Retailer to the
> Manufacturer, as to which there results an additional disparity in price to the
> WD's.
> (Proposed Complaint ¶ 81.)
>
> 94F.  The discriminatory prices charged to the supplying WD's (and to any direct-
> buying independent retailers) reflect anticompetitive price discrimination rather
> than permissible functional discounts when the required analysis is made, as
> described in ¶¶ 94A and 94C above.
> (Proposed Complaint ¶ 94(F).)
>
> 94G.  The contractual arrangements between any one of the Manufacturer
> Defendants any of the Retailer Defendants is not materially different from the
> contractual arrangements between the Manufacturer and the buying groups
> through which all WD's make their direct purchases from the Manufacturer, but
> for the discriminatory terms involved (favoring the Retailer Defendants) and
> disfavoring the buying groups and their WD members.
> (Proposed Complaint ¶ 94(G).)

Each of these allegations is conclusory.  It is common ground that, although the Court must accept factual allegations as true, it should not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action."  *Iqbal*, 129 S.Ct. at 1949. Accordingly, the additional allegations in the Proposed Complaint fail to cure the deficiencies in the price discrimination claim.

**B.      Promotional Programs**

In the September 2010 Opinion, the Court found that plaintiffs' advertising and promotional program claims failed to state a claim as to any particular defendants.  The allegations in the Prior Complaint operated at too high a level of generality to permit an inference of misconduct as to any particular defendant.  *September 2010 Opinion*, 737 F.Supp.2d at 218.  The Court also found that the allegations were too general to support the inference that any particular plaintiff suffered an injury as a result of being denied an advertising or promotional program.  *Id.*  The Court cannot identify any additions in the Proposed Complaint that correct these deficiencies, and plaintiffs have not pointed any out in their memorandum in support of amendment.  Accordingly, plaintiffs have failed to cure the deficiencies in the promotional program claim.

**C.      Inability to Develop Necessary Factual Content**

Plaintiffs essentially concede that they cannot plead factual content supporting their claims because the requisite pricing information is unavailable to them—it is in the hands of defendants.  The crux of plaintiffs' motion to amend is not the new allegations that they add in the Proposed Complaint, but rather their contention that they need discovery to develop the necessary factual content to plausibly plead (and eventually

17

prove) their claims.  As the Proposed Complaint alleges, defendants have complicated

pricing schemes and a flow of services back and forth between manufacturer and retailer

that together defy ready reduction to part-by-part prices.  (e.g. Proposed Complaint ¶¶ 60,

94.)  And in their reply memorandum in support of amendment, plaintiffs exhort the

Court that:

> The interpretation of pleading requirements ha[s] to take into account that the
> Defendant Manufacturers' product-line costs are not available to the Plaintiffs,
> and probably are not even available to the Defendant Manufacturers []because
> such calculation of product-line costs by their independent accounting firms
> would require the accountants to quit the account to avoid civil and criminal
> liability for falsification of accounting reports.
>
> The only way to obtain the needed product-line figures is through litigation, such
> as this, and the only way the pleading can be drafted is by describing the
> information needed.  The information itself, as stated above, is not available, and
> has never been sought through any discovery by the Plaintiffs.  …
>
> The specifics being demanded … are not available, but the way in which the price
> discrimination proof can be assembled has been pleaded by the Plaintiffs….
> (Pl. Rep. Mem. 3-4.)

Plaintiffs' implicit plea for discovery runs contrary to the pleading requirements

of *Iqbal* and *Twombly*.  In this regard, the recent decision of the Sixth Circuit Court of

Appeals in *New Albany Tractor, Inc. v. Louisville Tractor, Inc.*, ___ F.3d ___, 2011 WL

2448909 (6th Cir. June 21, 2011)), is instructive.  In that case, New Albany Tractor, a

Tractor Retailer, brought a Robinson-Patman Act price discrimination claim against Scag

Power Equipment and Louisville Tractor Inc., respectively a manufacturer of tractors and

a distributor/dealer.  Reviewing the district court's grant of a motion to dismiss, the Sixth

Circuit encountered a similar situation to the one here:

> This new 'plausibility' pleading standard causes a considerable problem for
> plaintiff because [defendants] are apparently the only entities with the information
> about the price at which Scag sells its equipment to Louisville Tractor.  This

> pricing information is necessary in order for New Albany to allege that it pays a
> discriminatory price for the same Scag equipment, as required by the language of
> the Act.
> *Id.* at *3.

The Sixth Circuit noted that "[b]efore *Twombly* and *Iqbal*, courts would probably have

allowed this case to proceed so that plaintiff could conduct discovery in order to gather

the pricing information."  *Id.*   However, even in light of New Albany's inability to obtain

the factual information necessary to plausibly plead price discrimination, the Sixth

Circuit affirmed the district court's dismissal of the complaint.  It based that decision on

two conclusions about *Iqbal*: (1) it "specifically directs that *no* discovery may be

conducted in cases such as this [where a complaint lacks the requisite factual content],

even when the information needed to establish a claim of discriminatory pricing is solely

within the purview of the defendant," *id.* (emphasis in original); and (2) "[t]he language

of *Iqbal*, 'not entitled to discovery,' is binding on the lower federal courts."  *Id., citing*

*Iqbal*, 129 S.Ct. at 1954.  While this procedural limitation may create inequities in some

cases, it does not do so here as plaintiffs have already had the benefit of discovery and

trial in the Eastern District action.

　　　　Other factors diminish the pull of plaintiffs' argument for a reduced pleading

standard.  This is a case where further discovery would be particularly expensive and

complicated—plaintiffs' allegations cover all auto parts sales of a host of manufacturers

over a lengthy time period, and their proposed price discrimination calculation requires

an accounting of every service provided by retailers and manufacturers alike.  *See also*

*Tires Inc. of Broward v. Goodyear Tire & Rubber Co.*, 295 F.Supp.2d 1349, 1353 (S.D.

Fla. 2003) (dismissing similar RPA complaint under notice pleading) ("Allowing this

case to go forward based upon these general allegations would create unmanageable

discovery regarding nearly every Goodyear tire sold in Broward County.").  Additionally, RPA claims in more traditional settings or with a better factual basis should still satisfy the plausible pleading requirement.  Plaintiffs' difficulty in pleading this case is in large part due to plaintiffs' strategy of attacking industry wide sales arrangements that make price term comparisons and claims of discrimination across two different distribution chains difficult to support with the requisite factual allegations.  And despite that, their pleading would still be tenable were plaintiffs to plead any factual content that explained why it is plausible—not merely possible—that defendants have broken the law. Although these plaintiffs have failed to do so, the bar is not so high that others—those with a plausible basis for their RPA allegations—will be unable to reach it.

Accordingly, the Court declines to apply a loosened version of the Rule 8 pleading standard to the Robinson-Patman Act claims in the Proposed Complaint.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' motion to amend [108] is DENIED.  The

Court does not reach defendants' alternative arguments in opposition to amendment.


SO ORDERED.

Dated: New York, New York
       September 27, 2011

                                        Richard J. Holwell
                                     United States District Judge

21